# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHKELQESA DERVISHI, *on her behalf and on the behalf of her autistic son T.*, <br>  *Plaintiff,* | ) <br> ) <br> ) <br> ) | 3:21-CV-1184 (SVN) |
| v. | ) <br> ) | |
| STAMFORD BOARD OF EDUCATION, <br>  *Defendant.* | ) <br> ) | March 30, 2023 |

## RULING AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Shkelqesa Dervishi brings this *pro se* action on her own behalf and on behalf of her twenty-four-year-old son with autism, T.D., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff contends that Defendant, the Stamford Board of Education, is required to reimburse her for the expenses she incurred between 2016 and 2020 to transport T.D. from their home in Stamford, Connecticut, to a private school specializing in educating children with autism located in New York City, which T.D. attended during that time. Plaintiff also contends that Defendant is required to reimburse her for expenses she incurred purchasing assistive technology recommended by T.D.'s school. The parties have filed cross-motions for summary judgment. For the reasons described below, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion.

## I.      THE IDEA

The IDEA is an "ambitious federal effort to promote the education of" children with disabilities. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 179 (1982)). Specifically, the IDEA is designed to ensure that children with disabilities have access to a "free appropriate public education" that meets the

"unique needs" of each child, and to ensure that the rights of children with disabilities and their parents are protected. 20 U.S.C. § 1400(d); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 (2d Cir. 2012). To that end, the IDEA offers federal funds to states that provide special education and related services to children with disabilities and comply with other statutory requirements. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017). The IDEA thus presents "a model of cooperative federalism," because it gives the participating states "the primary responsibility for developing and executing educational programs" for disabled children, but imposes on those states "significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (citation and internal quotation marks omitted). Most importantly, a local educational agency administers special education and related services to each child according to an "individualized education program" ("IEP") developed annually by school officials and the child's parent. *Grim v. Rhinebeck Cent. Sch. Dist.*, 846 F.3d 377, 379 (2d Cir. 2003) (citing 20 U.S.C. §§ 1412(a)(1)(A), 1401(8), 1414(d)).

If a parent and a school official disagree about the education of a child with disabilities, the parent may file a due process complaint with the state educational agency and request an "impartial due process hearing." 20 U.S.C. §§ 1415(b)(6), 1415(c)(2)(A), 1415(f)(1)(A); *Endrew F.*, 580 U.S. at 391–92. Connecticut, a participating state, has enacted legislation and regulations governing the process for an administrative hearing with the Department of Education. Conn. Gen. Stat. § 10-76h(a); Conn. Agencies Regs. § 10-76h-2. After resolution of the administrative process, the losing party can initiate an action in federal court. 20 U.S.C. § 1415(i)(2)(A); Conn. Gen. Stat. § 10-76h(d)(4).

## II.     FACTUAL BACKGROUND

### A.  T.D.'s Education

The record reveals the following facts, which are undisputed except when noted.[1]
Plaintiff's son, T.D., was born on January 14, 1999, and, at all relevant times he was eligible for
special education and related services due to his autism.  Pl.'s Local Rule ("L.R.") 56(a)2 St., ECF
No. 32, ¶¶ 2–3.  Prior to 2016, T.D. was educated at home and did not attend school.  Hearing
Officer ("H.O.") Decision, ECF No. 1-2, at 4; Def.'s L.R. 56(a)2 St., ECF No. 29-1, ¶ 1.  On April
26, 2016, T.D.'s planning and placement team ("PPT")[2] convened to discuss T.D.'s education for
the 2016–17 school year.  Pl.'s L.R. 56(a)2 St. ¶ 4.  Defendant represents that, at this PPT meeting
and at every PPT meeting that followed, Plaintiff was provided a copy of the "procedural
safeguards," which are, essentially, a list of the rights of parents provided for in the IDEA,[3] and
informed Defendant that she did not need to review of them.  Pl.'s L.R. 56(a)2 St. ¶¶ 6, 8, 15, 22,
24, 44, 47, 56.

Various individuals attended the April 26, 2016, meeting, including: Dr. Wayne Holland,
Defendant's Director of Special Education; a special education teacher and psychologist employed
by Defendant; a representative from the Connecticut Department of Children and Families

---

[1] The parties have a lengthy litigation history concerning T.D.'s education.  *See, e.g.*, *Dervishi v. Stamford Bd. of Educ.*, 653 F. App'x 55, 56 (2d Cir. 2016) (summary order).  Only the facts relevant to the present matter are discussed herein.

[2] Connecticut law defines the PPT as the IEP team "as defined in the IDEA."  Conn. Agencies Regs. § 10-76a-1(14).  The IDEA, in turn, defines the IEP team as a group of individuals that determines the educational needs of a child with a disability and develops the IEP for that child.  34 C.F.R. § 300.23.  The IEP team/PPT includes the parent of the disabled child, several school officials, and, at the discretion of the parent or the local educational agency, any other individual with knowledge or special expertise regarding the child.  34 C.F.R. § 300.321(a).

[3] The IDEA requires that the procedural safeguards notice be given to the parents "only one time a school year," except that a copy must also be given to the parent upon initial referral or a parent's request for evaluation; upon receipt of the first State complaint and first due process complaint in a school year; in accordance with certain disciplinary regulations; and upon request by a parent.  34 C.F.R. § 300.504(a).  The procedural safeguards notice must include a full explanation of all the procedural safeguards relating to independent educational evaluations, prior written notice, parental consent, access to education records, the opportunity to present and resolve complaints through due process and State complaint procedures, and requirements for unilateral placement by parents of children in private schools at public expense, among other topics.  *Id.* § 300.504(c).

("DCF"); an attorney for Defendant; Plaintiff and her attorney; and several of T.D.'s treating medical providers, specifically, Rosalind Cormier, T.D.'s speech and language pathologist, Dr. Elizabeth Roberts, T.D.'s neuropsychologist, and Dr. John Samanich, T.D.'s psychiatrist. Pl.'s L.R. 56(a)2 St. ¶ 7; Def.'s L.R. 56(a)2 St. ¶ 3; Notice ("Not.") of 4/26/2016 PPT Meeting ("Mtg."), ECF No. 26-3 at 2; Report ("Rpt.") of 4/26/2016 PPT Mtg., ECF No. 26-4 at 2.

At the meeting, the team of school officials recommended placing T.D. at Westchester School for Special Children ("WSSC"), but Plaintiff disagreed with that recommendation. Pl.'s L.R. 56(a)2 St. ¶ 9; Rpt. of 4/26/2016 PPT Mtg. at 3. Plaintiff reported that T.D. had been accepted to the Keswell School ("Keswell"), located in New York City. Def.'s L.R. 56(a)2 St. ¶ 2. Dr. Roberts presented information regarding her evaluation and treatment of T.D., and, based on her familiarity with Keswell and the particular features it offered, recommended placing T.D. there. *Id.* ¶ 4–5; Tr. of 4/26/2016 PPT Mtg., ECF No. 31 at 21, at 47:21–48:3. Dr. Samanich and Cormier also recommended placing T.D. at Keswell. Def.'s L.R. 56(a)2 St. ¶ 6.

Following this meeting, school officials visited Keswell, and Plaintiff and Dr. Roberts visited WSSC. *Id.* ¶¶ 9–10. The next PPT meeting took place on June 6, 2016, and the attendees discussed Plaintiff's request to have T.D. placed at Keswell. Pl.'s L.R. 56(a)2 St. ¶¶ 11–12, 16. The school officials who visited Keswell reported "programmatic issues," as well as concerns with the two-hour driving distance between Stamford and Keswell and T.D.'s inability to tolerate such a long commute. Rpt. of 6/6/2016 PPT Mtg., ECF No. 26-6 at 3. Although T.D.'s treating medical providers did not attend this PPT meeting, letters from Cormier and Dr. Samanich were read into the record, memorializing their opinions that WSSC was not appropriate for T.D. and that he should be placed at Keswell. *Id.* In light of the school team's concerns with Keswell, and their

belief that WSSC would provide T.D. with free appropriate public education, the school team continued to recommend that T.D. be placed at WSSC.  *Id.*; Pl.'s L.R. 56(a)2 St. ¶ 19.

The next PPT meeting took place on August 31, 2016, at which Plaintiff again requested to have T.D. placed at Keswell.  Pl.'s L.R. 56(a)2. St. ¶¶ 21, 25.  The school team continued to believe that WSSC would provide T.D. with free and appropriate education, but, "as an accommodation" to Plaintiff and out of concern that T.D. had not been in school for a long time, the school team agreed to pay the tuition for T.D. to attend Keswell.  Tr. of 8/31/2016 PPT Mtg., ECF No. 26-11, at 90:2–13; Rpt. of 8/31/2016 PPT Mtg., ECF No. 26-10 at 3.  The school team was not willing to agree to pay for the transportation expenses associated with T.D. attending Keswell, however, citing the long commuting distance.  Rpt. of 8/31/2016 PPT Mtg. at 3; Tr. of 8/31/2016 PPT Mtg. at 90:11–13, 90:24–91:2, 92:17–22, 94:20–95:12.  Plaintiff agreed to transport T.D. to Keswell until the dispute could be addressed at the next PPT meeting.  8/31/2016 PPT Mtg. Tr. at 94:25–95:2, 114:14–18.  T.D. began attending Keswell the next day.  *See* Tr. of 4/27/2021 H.O. Hearing, ECF No. 26-33, at 147:9–11.

Another PPT meeting was held on November 3, 2016, and the transportation issue was discussed.  Def.'s L.R. 56(a)2 St. ¶ 17; Tr. of 11/3/2016 PPT Mtg., ECF No. 31 at 38, at 1.  Plaintiff requested that Defendant reconsider its refusal to pay for transportation and begin to provide a special bus and aide to ensure T.D.'s safe transportation to Keswell.  Tr. of 11/3/2016 PPT Mtg. at 3–6.  She represented that it was not safe for her to transport T.D. because he was able to unlock and open the car door, and Dr. Samanich recommended that Defendant pay for a special bus and aide to ensure T.D.'s safe transportation to Keswell.  Def.'s L.R. 56(a)2 St. ¶ 17; Tr. of 11/3/2016 PPT Mtg. at 26:10–20.  The school team continued to refuse to pay for transportation and represented that, although they accommodated Plaintiff's request that T.D. be placed at Keswell,

it was not their recommended placement partially due to transportation issues.  Tr. of 11/3/2016 PPT Mtg. at 26:21–24, 31:7–9, 34:16–20.

The next PPT meeting was held on July 26, 2017, for the purpose of conducting an annual review of T.D.'s education.[4]  Pl.'s L.R. 56(a)2 St. ¶¶ 43, 45.  Plaintiff again requested that Defendant pay for T.D.'s transportation to Keswell, and Defendant again refused.  *Id.* ¶ 50; Rpt. of 7/26/2017 PPT Mtg., ECF No. 26-15 at 4.  The next PPT meeting for T.D.'s annual review was held on July 11, 2018.  Pl.'s L.R. 56(a)2 St. ¶¶ 53–54.  The school team recommended placing T.D. at the Connecticut Center for Child Development ("CCCD") or Giant Steps School, but Plaintiff rejected those placements and again requested placing T.D. at Keswell based on the continued recommendations of T.D.'s treating medical providers.  Pl.'s L.R. 56(a)2 St. ¶¶ 57–58; Rpt. of 7/11/2018 PPT Mtg., ECF No. 26-19 at 5.  The school team denied Plaintiff's request to place T.D. at Keswell, but again accommodated her request to pay the tuition for T.D. to attend Keswell.  Rpt. of 7/11/2018 PPT Mtg. at 5.  Plaintiff requested that Defendant pay for T.D.'s transportation to Keswell, and the school team refused.  *Id.* at 3.

The next PPT meeting was held on April 29, 2019, and it followed the same pattern.  Pl.'s L.R. 56(a)2 St. ¶ 65.  Again, the school team recommended placing T.D. at CCCD or Giant Steps, and Plaintiff rejected those placements.  *Id.* ¶¶ 67, 69; Rpt. of 4/29/2019 PPT Mtg., ECF No. 26-22 at 3, 6.  Plaintiff requested placing T.D. at Keswell, which the school team denied, but the school team accommodated her request to pay the tuition for T.D. to attend Keswell, which the

---

[4] Defendant noticed the meeting for July 18, 2017, but the meeting date was changed to July 26, 2017.  *See* Pl.'s L.R. 56(a)2 St. ¶ 43; Not. of 7/18/2017 PPT Mtg., ECF No. 26-14; Not. of 7/26/2017 PPT Mtg., ECF No. 26-16.  Defendant represents that the school team continued to recommend WSSC for the 2017–18 school year, but continued to accommodate Plaintiff's request to pay for the tuition for him to attend Keswell.  Pl.'s L.R. 56(a)2 St. ¶¶ 48–49.  The page of the exhibit cited in support of this representation, Defendant's Exhibit 13 (Rpt. of 7/26/2017 PPT Mtg., ECF No. 26-15) at page 2, appears to be missing from Defendant's submission.  In any event, it appears undisputed that Defendant paid tuition for T.D. to attend Keswell for the 2017–18 school year.

school team characterized as Plaintiff's "private placement."  Rpt. of 4/29/2019 PPT Mtg. at 3, 6.
The school team again refused to pay for T.D.'s transportation to Keswell.  *Id.* at 3.

The next PPT meeting was held on July 11, 2019, for the purpose of conducting an annual
review of T.D.'s education.  Pl.'s L.R. 56(a)2 St. ¶ 74.  The school team recommended placing
T.D. at The Bridge School, a special education school approved by the New York Department of
Education located in Rye Brook, New York, closer to Stamford than Keswell.  *Id.* ¶ 76; Rpt. of
7/11/2019 PPT Mtg., ECF No. 26-24 at 3; Tr. of 7/11/2019 PPT Mtg., ECF No. 26-25, at 128:14–
19.  Plaintiff rejected the school team's recommendation, explaining that she would follow Dr.
Samanich's recommendation because he was T.D.'s treating psychiatrist and that Dr. Samanich
recommended "only Keswell."  Rpt. of 7/11/2019 PPT Mtg. at 141:14–25.  Plaintiff again
requested that Defendant pay for T.D.'s transportation to Keswell, and the school team again
refused.  *Id.* at 135:6–19.  Dr. Holland explained that Keswell was not Defendant's
recommendation or placement, and that Defendant would not pay for transportation to a school
that was not Defendant's recommended placement.  *Id.* at 135:15–19, 136:6–9.

In March of 2020, when the COVD-19 pandemic began, Keswell closed and T.D. received
remote instruction.  Pl.'s L.R. 56(a)2 St. ¶¶ 88, 90.  The final PPT meeting was held on July 29,
2020, for the purpose of discussing T.D.'s educational needs from the beginning of the 2020–21
school year until his twenty-second birthday in January of 2021.  Tr. of 7/29/2020 PPT Mtg., ECF
No. 30 at 18, at 7:2–7.  Plaintiff and Defendant continued to disagree over whether Defendant's
consent to pay for T.D.'s tuition to attend Keswell represented Defendant's placement or a
unilateral placement by Plaintiff.  *Id.* at 44:3–13.  In the fall of 2020, as well as at various points
throughout T.D.'s education at Keswell, Plaintiff provided Defendant with invoices seeking

reimbursement of transportation expenses, which Defendant did not pay.  Pl.'s L.R. 56(a)2 St. ¶¶ 91–92.

### B.  Procedural History

On November 6, 2020, Plaintiff, through counsel, filed a due process complaint and a request for a hearing with the Connecticut Department of Education, requesting reimbursement for the expenses she incurred transporting T.D. to Keswell since 2016, as well as reimbursement for certain assistive technology she had purchased for T.D.'s use.  H.O. Decision, ECF No. 26-28, at 2, 5.  Defendant moved to dismiss Plaintiff's claims prior to November 6, 2018, on the ground that such claims were barred by the applicable statute of limitations, and the hearing officer granted Defendant's motion.  *Id.* at 2; ECF No. 26-32 at 3.

Following ten days of hearings, the hearing officer issued a final decision on August 18, 2021, rejecting Plaintiff's complaint.  H.O. Decision at 6.  The hearing officer reasoned that Defendant had not proposed T.D.'s placement at Keswell, so it was not Defendant's placement. *Id.*  The hearing officer further noted that, if Defendant had proposed Keswell, such a placement would not have complied with state and federal law because it was not designated as a State Approved Special Education Program by the Department of Education.  *Id.*  Moreover, the hearing officer noted that Defendant recommended several other placements that would have provided T.D. with free appropriate public education in compliance with state and federal law, and that Plaintiff rejected those placements.  *Id.*  Thus, Keswell was Plaintiff's placement, and Defendant was not required to fund T.D.'s transportation.  *Id.*  The hearing officer also identified another ground for rejecting Plaintiff's complaint, specifically, her unreasonableness throughout the process of determining T.D.'s placement by refusing to allow the transmission of T.D.'s records

to Defendant's proposed placements and insisting on a single school that did not conform to state standards. *Id.*

Plaintiff filed the present action *pro se* on September 8, 2021.  ECF No. 1.  She seeks an order reversing the decision of the hearing officer and ordering Defendant to reimburse her for transportation expenses since 2016 and the cost of the assistive technology.  *Id.* at 4.  Defendant filed a motion to dismiss the complaint, which the Court denied.  ECF No. 19.  Following a short period of discovery, Plaintiff and Defendant filed the present cross-motions for summary judgment.  ECF Nos. 26, 27.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Appeals to federal court under the IDEA are typically resolved by cross-motions for summary judgment pursuant to Rule 56, but such motions are simply procedural mechanisms.  *M.H.*, 685 F.3d at 225–26 (citing *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)); *Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 309 (D. Conn. 2016).  In substance, an IDEA claim is akin to an appeal of an administrative decision, not a summary judgment motion.  *M.H.*, 685 F.3d at 226.

The state agency's decision is subject to independent judicial review, and the district court must consider the administrative record and any additional evidence and decide whether to grant relief based on a preponderance of the evidence standard.  20 U.S.C. § 1415(i)(2)(C); *Walczak*, 142 F.3d at 129 (citing *Rowley*, 458 U.S. at 205).  That said, the role of the district court in reviewing the state agency's decision is "circumscribed."  *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (quoting *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 101 (2d Cir. 1998)).  "The standard of review 'requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review.'"  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (quoting *M.H.*, 685 F.3d at 244).  For example, the district court's deference to the state agency is greatest with respect to well-reasoned determinations of fact and subjective credibility assessments, and such deference is least with respect to issues of law and other issues that are not well-reasoned.  *See id.*; *Lillbask*, 397 F.3d at 82; *Walczak*, 142 F.3d at 129; *M.H.*, 685 F.3d at 240.  Notably, although the district court must base its decision whether to sustain the agency's action on the preponderance of the evidence, "it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (citation and internal quotation marks omitted).

The Court also bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

## IV.     DISCUSSION

The parties' cross-motions for summary judgment present three issues for consideration: first, whether Plaintiff's claims for reimbursement prior to November 6, 2018, are time-barred; second, whether Plaintiff is entitled to reimbursement for expenses associated with transporting T.D. to Keswell; and third, whether Plaintiff is entitled to reimbursement for expenses associated with providing T.D. with certain assistive technology devices.  The Court considers each issue in turn.

### A.  Timeliness of Claims Prior to 2018

To begin, the Court agrees with the hearing officer that Plaintiff's claims prior to November 6, 2018, are time-barred.  Both the IDEA and Connecticut law provide a two-year statute of limitation for filing a due process complaint with the state agency.  20 U.S.C. § 1415(f)(3)(C) (providing that a party "shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint"); Conn. Gen. Stat. § 10-76h(a)(4) (providing that a parent "shall have two years to request a hearing from the time" the local education agency "proposed or refused to" change the placement or "the provision of a free appropriate public education placement" to the child); Conn. Agencies Regs. § 10-76h-4(a) (providing that a party "shall have two years to request a hearing from the time the party knew or should have known about" the local educational agency's proposal or refusal to provide a free appropriate public education).  Defendant refused to pay for T.D.'s transportation to Keswell at every PPT meeting since the meeting in August of 2016, when it first agreed to pay for T.D.'s tuition to attend Keswell.  But Plaintiff did not file her due process complaint until November 6, 2020, more than four years later.  By the plain language of the IDEA

and Connecticut law, Plaintiff's claims prior to November 6, 2018, were untimely submitted to the Department of Education.

Moreover, Plaintiff has not shown, by a preponderance of the evidence, that either of the two possible exceptions apply here. The IDEA provides that the two-year limitation period does not apply if the parent was "prevented from" filing the complaint due to (1) "specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint," or (2) "the local educational agency's withholding of information" that it was required to provide to the parent. 20 U.S.C. § 1415(f)(3)(D). *Accord* 34 C.F.R. § 300.511(f); Conn. Agencies Regs. § 10-76h-4(a). Plaintiff has not identified any "specific misrepresentations" by Defendant indicating that the issues of reimbursement for transportation expenses or assistive technology had been resolved in Plaintiff's favor, so the first exception to the statute of limitation does not apply.

With respect to the second exception, Plaintiff contends that Defendant failed to provide her with various pieces of information required by the procedural safeguards. Although Plaintiff appears to raise this argument in the context of whether there were procedural violations justifying reimbursement, the Court will interpret this argument as applying to the statute of limitation issue as well, consistent with the requirement to interpret the filings of a self-represented litigant liberally. Relevant here, she claims that Defendant's notices of the PPT meetings did not notify her that T.D.'s placement at Keswell or another school would be discussed and that Defendant surprised her by recommending a new placement for T.D. "at the last minute" of various PPT

meetings.[5]  The Court is not convinced that the exception for improper withholding of information should apply.

As noted above, *see supra* footnote 3, the IDEA requires a local educational agency to provide the parent with a copy of the "procedural safeguards" at least one time per school year, and on certain other occasions set forth in the regulations.  34 C.F.R. § 300.504(a).  The record here reflects that Defendant attached a copy of the procedural safeguards to the notices it sent to Plaintiff before most PPT meetings.  Not. of 4/26/2016 PPT Mtg.; Not. of 8/31/2016 PPT Mtg., ECF No. 26-9 at 2; Not. of 7/26/2017 PPT Mtg.; Not. of 7/11/2018 PPT Mtg., ECF No. 26-18 at 2; Not. of 4/29/2019 PPT Mtg., ECF No. 26-21 at 2; Not. of 7/11/2019 PPT Mtg., ECF No. 26-23 at 2.[6]  The IDEA's procedural safeguards, in turn, require a local educational agency to provide prior written notice to a parent when the agency proposes to change a child's educational placement or refuses a parent's requested placement.  20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a); *E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 547 (S.D.N.Y. 2016).  This notice must contain a description of the action proposed or refused by the agency and an explanation for the agency's decision.  20 U.S.C. § 1415(c)(1); 34 C.F.R. §§ 300.503(b), 300.504(c).

---

[5] Plaintiff identifies other information that Defendant purportedly failed to provide her in contravention of the IDEA's procedural safeguards, but those issues do not merit application of any exception to the IDEA's statute of limitation. For example, Plaintiff mentions that Defendant excluded her from communications between Defendant and Keswell, but she provides no evidence to support this assertion and generally devotes little attention to this argument.  Plaintiff also contends that Defendant "withheld information" when it told Plaintiff that "they couldn't transport T.D. to Keswell due to the distance" instead of providing her with a state manual under which she purportedly could have consented to the longer commute.  ECF No. 30 at 3–4.  But Plaintiff provides no support for the contention that Defendant was required to point her to this manual, particularly given that she was represented by counsel at all relevant times.  Accordingly, these pieces of information cannot support an exception to the IDEA's statute of limitation.

[6] Plaintiff's contention that Defendant failed to provide written notice of these PPT meetings is unsupported by the record, particularly in light of the meeting reports that represent Plaintiff received written notice of the meetings.  Rpt. of 4/26/2016 PPT Mtg. at 4; Rpt. of 6/6/2016 PPT Mtg. at 3; Rpt. of 8/31/2016 PPT Mtg. at 3; Rpt. of 7/11/2018 PPT Mtg. at 3; Rpt. of 4/29/2019 PPT Mtg. at 3; Rpt. of 7/11/2019 PPT Mtg. at 3.  The only evidence Plaintiff provides in support of her contention that she did not receive written notice of the PPT meetings is excerpts of the transcript of the PPT meeting in July of 2020.  The transcript, however, reveals that Defendant asked Plaintiff's attorney if she would waive the right to five days' prior notice of that particular meeting, and Plaintiff's attorney *consented* to waive the required notice, on behalf of Plaintiff.  Tr. of 7/29/2020 PPT Mtg. at 7:8–22.

Although Defendant sent notices to Plaintiff before each PPT meeting, on the whole, they did not comply with the IDEA's requirement that a proposed placement change, or a refusal of a parent's requested placement, must be preceded with clear, detailed notice. The notice sent to Plaintiff before the very first PPT meeting in April of 2016, for instance, expressly stated that the purpose was to "Discuss Placement Options," although it did not state what Defendant's recommended placement would be. Not. of 4/26/2016 PPT Mtg. at 2. None of the subsequent notices specifically identified T.D.'s private school placement as a topic to be raised at the PPT meetings. *See* Not. of 8/31/2016 PPT Mtg. at 2 (stating that the purposes of the PPT meeting included developing, reviewing, and revising T.D.'s IEP, conducting an annual review, and considering transition planning); Not. of 6/6/2016 PPT Mtg. at 2 (stating that the purposes of the PPT meeting were to review and revise T.D.'s IEP and consider transition planning); Not. of 7/26/2017 PPT Mtg. at 2 (stating that the purposes of the PPT meeting were to conduct an annual review and consider transition planning); Not. of 7/11/2018 PPT Mtg. at 2 (stating that the purposes of the PPT meeting were to conduct an annual review and reevaluate T.D.'s eligibility for special education and related services); Not. of 4/29/2019 PPT Mtg. at 2 (stating that the purposes of the PPT meeting were to review and revise T.D.'s IEP and reevaluate T.D.'s eligibility for special education and related services).

The Court construes Plaintiff's argument as contending that, because the notices after April of 2016 did not meaningfully notify her that Defendant intended to propose a new placement or reject T.D.'s ongoing placement at Keswell, the second exception to the IDEA's two-year statute of limitation applies because relevant information was withheld from her. While the Court acknowledges that this information was indeed withheld from Plaintiff, it does not satisfy the exception to the statute of limitation. The Second Circuit has not expounded on the precise

requirements for this exception to the statute of limitation, but district courts in this circuit have reasoned that the exception applies only when the parent does not know of her rights because of the local educational agency's failure to disclose information it was required to disclose under the IDEA's procedural safeguards. *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173 (JMF), 2021 WL 965323, at *12 (S.D.N.Y. Mar. 15, 2021) (quoting *Bd. of Educ. of N. Rockland Cent. Sch. Dist. v. C.M.*, No. 16 CV 3924 (VB), 2017 WL 2656253, at *9–10 (S.D.N.Y. June 20, 2017), *aff'd*, 744 F. App'x 7, 11 (2d Cir. 2018) (summary order)).   This is consistent with the rule expressed in the Third Circuit that withheld information in violation of the IDEA's procedural safeguards satisfies the exception to the statute of limitation only when the parent shows that the withholding "*caused* her failure to*" file a due process complaint within the two-year limitation period. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 246–47 (3d Cir. 2012) (emphasis in original) ("Thus, where the evidence shows, for example, that parents were already fully aware of their procedural options, they cannot excuse a late filing by pointing to" the withheld information); *see also* 20 U.S.C. § 1415(f)(3)(D) (providing that the statute of limitation applies only "*if the parent was prevented from*" filing the due process complaint due to a specific misrepresentation or withheld information) (emphasis added)).

Here, the Court cannot find, by a preponderance of the evidence, that Plaintiff meaningfully did not know of her rights due to Defendant's failure to notify her that T.D.'s placement would be discussed at PPT meetings subsequent to April of 2016, or that such failure was the cause of her decision not to file a due process complaint within the two-year limitation period.   The parties' long and contentious history demonstrates that T.D.'s placement at Keswell was a matter of ongoing dispute.   From April of 2016 onward, Dr. Holland and the other school team members of the PPT consistently provided Plaintiff with a copy of the procedural safeguards and, at the same

time, refused to provide T.D.'s transportation to Keswell.  Indeed, Plaintiff, through counsel, reiterated her request for Defendant to provide T.D.'s transportation at nearly every PPT meeting; because Defendant refused to provide T.D.'s transportation to Keswell partly due to its opposition to his placement there, Plaintiff's request implicated the parties' ongoing dispute about the propriety of T.D.'s placement.  Those facts demonstrate that Plaintiff knew of her rights and undermine any suggestion that she did not file her due process complaint within the two-year period due to Defendant's withholding of information.  *C.M.*, 744 F. App'x at 11; *D.K.*, 696 F.3d at 246–47.  Accordingly, the exception to the statute of limitation for withheld information does not apply here, notwithstanding Defendant's procedurally deficient notices.

Plaintiff also contends that the hearing officer improperly decided the timeliness issue prematurely, without considering Plaintiff's evidence of Defendant's coercive practices.  ECF No. 30 at 2–3.  The administrative record, however, demonstrates that the hearing officer heard oral argument from Plaintiff's attorney on the issue of coercion by Defendant and ultimately rejected Plaintiff's argument that any such practices would satisfy the exceptions to the statute of limitation.  Tr. of 3/3/2021 H.O. Hearing, ECF No. 26-31, at 80:8–17, 86:2–13; ECF No. 26-32 at 3 (hearing officer's decision granting Defendant's motion to dismiss and reasoning that, even assuming Defendant engaged in the coercive practices as alleged, Plaintiff was not deceived in any way and thus the exceptions to the statute of limitation were not satisfied).

Moreover, this Court would be able to consider evidence that Defendant misrepresented or withheld any information from Plaintiff, given that this Court's review of the hearing officer's decision is independent.  *See* 20 U.S.C. § 1415(i)(2)(C)(ii) (providing that the district court must hear "additional evidence" not presented in the administrative proceeding at the request of a party); *T.Y.*, 584 F.3d at 418 ("Though the court must show deference to administrative [agency] findings,

the court is also empowered to conduct an independent review of the record as a whole and even hear additional evidence."). But Plaintiff's argument on this point, citing her attorney's opposition to Defendant's motion to dismiss at the administrative proceeding, rings of general antagonism between Plaintiff and Defendant in light of their long and litigious history. She does not identify any specific misrepresentations or withheld information that prevented her from filing a due process complaint within two years of Defendant's first refusal to pay for transporting T.D. to Keswell. Accordingly, the Court cannot find, by a preponderance of the evidence, that either of the exceptions to the statute of limitation apply, and the Court will consider Plaintiff's IDEA claim only since November 6, 2018. Defendant's motion for summary judgment is thus granted on that issue, and Plaintiff's motion for summary judgment is denied on that issue.

### B.  Reimbursement for Transportation Expenses

As discussed above, the IDEA imposes a core obligation on local educational agencies to provide "free appropriate public education" at public expense. 20 U.S.C. §§ 1400(d)(1)(A), 1401(9). Free appropriate public education is defined as special education and related services that, among other requirements, satisfies "the standards of the State educational agency" and conforms with the child's IEP. *Id.* §§ 1401(9)(B), 1401(9)(D); *accord* 34 C.F.R. § 300.17. Relevant here, "related services" are defined to include transportation to and from school and any specialized equipment required to transport the child. 20 U.S.C. § 1401(26)(A); 34 C.F.R. §§ 300.34(a), 300.34(c)(16).

A local educational agency can comply with the IDEA by placing a child with disabilities in a private school for the provision of special education and related services, in accordance with that child's IEP, at no cost to the child's parent.[7] 20 U.S.C. § 1412(a)(10)(B)(i); *see also* Conn.

---

[7] In such a case, the state educational agency—here, the Connecticut Department of Education—shall determine whether the private school meets the agency's standards. 20 U.S.C. § 1412(a)(10)(B)(ii).

Gen. Stat. § 10-76d(b).  In such a circumstance, the local educational agency must also provide transportation as a related service.  *See* 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(c)(16); Conn. Agencies Regs. § 10-76d-19.  Accordingly, if *Defendant* placed T.D. at Keswell, it undoubtedly must reimburse Plaintiff for the expenses associated with transporting T.D. there.

A local educational agency need not pay for the special education and related services of a private school placement, however, if the local educational agency "made a free appropriate public education available to the child and the parents elected to place the child" in the private school. 20 U.S.C. § 1412(a)(10)(C)(i).  A parent may enroll their child in the private school at their own financial risk and seek tuition reimbursement from the local educational agency by filing a due process complaint; if the state educational agency or a federal court determines that the local educational agency did not offer a free appropriate public education, and if certain other requirements are met, the parent may be entitled to reimbursement for the private school placement. *Id.* § 1412(a)(10)(C)(ii); *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985); *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015).

Thus, the reimbursement of transportation expenses in the present case turns on two sequential questions: first, whether T.D. was placed at Keswell by Defendant or unilaterally by Plaintiff; and, second, if the placement was unilateral, whether Plaintiff is nevertheless entitled to reimbursement under the IDEA.

### 1. Whether T.D.'s Placement was Unilateral

For the reasons that follow, the Court agrees with the hearing officer's conclusion that Keswell was a unilateral placement by Plaintiff.  *See* H.O. Decision at 6.  In reaching that conclusion, the hearing officer reasoned that, as a factual matter, Defendant "did not propose Keswell in the IEP and therefore, Keswell was not [Defendant's] placement." *Id.*  The hearing

officer further reasoned that, as a legal matter, Keswell was not a State Approved Special Education Program and, thus, Defendant could not have recommended Keswell in compliance with federal and state law. *Id.* Therefore, Keswell could not have been Defendant's placement. *Id.*

The Court first agrees with the hearing officer's interpretation of the relevant law. As noted above, the IDEA and associated federal regulations define "free appropriate public education" as requiring the special education provided to satisfy the standards set by the state educational agency. 20 U.S.C. § 1401(9)(B); 34 C.F.R. § 300.17(b). In turn, Connecticut law provides that a local educational agency seeking to place a child with disabilities in a private school must obtain the approval of the State Board of Education, and the private school must satisfy standards established by the State Board of Education. Conn. Gen. Stat. § 10-76d(b); *see also* 20 U.S.C. § 1412(a)(10)(B)(ii) (providing that, in the case of a local educational agency's private school placement, the state educational agency must determine whether the private school meets the state agency's standards). Connecticut regulations set forth the requirements a private special education school must satisfy in order to obtain approval by the State Board of Education and the procedures by which the private school seeks approval from the State Board of Education. Conn. Agencies Regs. §§ 10-76d-17(c), 10-76d-17(e). Here, the hearing officer found that Keswell was not a State Approved Special Education Program and, accordingly, that Defendant's placement of T.D. there would have contravened the IDEA and Connecticut law. H.O. Decision at 4. For that reason, the hearing officer explained, T.D.'s placement at Keswell had to be considered unilateral by Plaintiff. The Court agrees with the hearing officer's interpretation of the law on that point: if Defendant had placed T.D. at Keswell, such placement would have contravened federal and state law, given that Keswell was not a state-approved private school.

Plaintiff does not contend that Keswell was a state-approved private school or that federal and state law would have allowed Defendant to place T.D. there.  Rather, Plaintiff primarily contends that, as a factual matter, *Defendant* agreed to pay for T.D.'s tuition to attend Keswell and, thus, *Defendant* placed T.D. at Keswell.  For its part, Defendant contends that its accommodation to pay for T.D.'s tuition to Keswell did not constitute assent to the placement, in light of Defendant's repeated and vehement opposition to the placement.

There is relatively little authority addressing the factual question of what constitutes a unilateral placement.  The IDEA itself does not define "unilateral," but the context of the statute suggests that a placement may be unilateral when it is "without consent of or referral by" the local educational agency.  *See* 20 U.S.C. § 1412(a)(10)(C) (section titled "Payment for education of children enrolled in private schools without consent of or referral by the public agency").  To that effect, one case in the Second Circuit suggested that a private school placement was unilateral despite the local educational agency's stipulation to pay the private school's tuition while the parties resolved their ongoing dispute about the adequacy of the agency's recommended public school placements.  *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 908 (2d Cir. 1982) (reasoning that "[p]ayment and placement are two different matters" and ultimately holding that the private school placement was not the local educational agency's placement for the purpose of the IDEA's stay-put provision, which requires that a student stay in his current program during the course of a due process hearing, despite that the agency had agreed to pay for the private school).[8]

---

[8] The holding of *Zvi D.* in the context of the IDEA's stay-put provision appears to have been abrogated by amendments and subsequent interpretation of the IDEA.  *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 453 (2d Cir. 2015) (explaining that the IDEA requires a local educational agency to fund a private stay-put placement, notwithstanding an agreement by the parties to the contrary); *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483 n.7 (2d Cir. 2002) (noting that *Zvi D.* predated the U.S. Supreme Court's decision in *Burlington*).  The present case, however, does not implicate the IDEA's stay-put provision.

The Ninth Circuit and the U.S. District Court for the District of Hawaii have defined a "unilateral placement" as "when one party unilaterally (i.e., without consent or agreement of the other party) enrolls the student in a special education program." *K.D. ex rel. C.L. v. Dep't of Educ., Haw.*, 665 F.3d 1110, 1122 (9th Cir. 2011) (quoting *Makiko D. v. Hawaii*, No. 06-CV-189, 2007 WL 1153811, at *7 (D. Haw. Apr. 17, 2007)).  In *K.D.*, the parent and local educational agency entered into a settlement agreement in which the agency agreed to pay for the autistic child's private school tuition for one academic year.  *Id.* at 1115.  For the two years that followed, the local educational agency recommended placing the child in a public school, but the parent rejected that placement, kept the child enrolled in the private school, and sought tuition reimbursement.  *Id.* For the purpose of determining the applicability of the IDEA's longer statute of limitation or the shorter state law statute of limitation, which turned on whether the placement for those two years was unilateral, the Ninth Circuit held that the parent unilaterally enrolled the child in the private school after the settlement agreement expired without the consent or agreement of the local educational agency.  *Id.* at 1122.  Notably, the court rejected the parent's argument that the settlement agreement rendered the private school placement bilateral from the point of that agreement onward.  *Id.*

Similarly, in *Makiko D.*, the parents withdrew their autistic child from public school, enrolled him in a private school, and filed a due process complaint seeking tuition reimbursement from the local educational agency.  2007 WL 1153811, at *1.  The parents prevailed and were reimbursed for that year of the private school's tuition; the following academic year, however, the local educational agency recommended a public school placement, which the parents rejected.  *Id.* The parents informed the local educational agency that they were placing the child in another private school, and the agency responded that it would not pay for the private school's tuition

because the parents' placement was unilateral. *Id.* at *1–2. Like in *K.D.*, the applicability of the IDEA's longer statute of limitation or the shorter state law statute of limitation turned on whether the placement was unilateral, and the district court held that the placement was unilateral, given that the local educational agency did not consent to the placement and informed the parents that the placement was considered unilateral. *Id.* at *7.

Defendant contends that the logic of *K.D.* and *Makiko D.*, finding the parents' decisions to place their children in private school in those cases to have been unilateral, should govern this case. In particular, Defendant argues that, because Defendant accommodated Plaintiff's request to pay the tuition for T.D. to attend Keswell without ever consenting or agreeing to the placement, it was a unilateral placement. The Court notes that those cases have limited persuasive value here, given that they are out-of-circuit cases interpreting a Hawaii state statute for the purpose of determining the applicability of a federal or state statute of limitation. Those cases do, however, support the proposition from *Zvi D.* that a local educational agency may agree to pay for the tuition of a private school placement while maintaining an objection to that placement and continuing to seek a resolution of the dispute with the parent regarding that placement, rendering the placement unilateral notwithstanding the agency's payment for it.

Here, the preponderance of the evidence demonstrates that, notwithstanding Defendant's agreement to pay for T.D.'s tuition to attend Keswell, it maintained its objection to that placement and continued to seek resolution of the dispute between it and Plaintiff by recommending other placements. To begin, Defendant refused to accommodate Plaintiff's request to place T.D. at Keswell for the first two PPT meetings in April and June of 2016, reporting "programmatic" concerns as well as concerns with T.D.'s inability to tolerate the long commute. Pl.'s L.R. 56(a)2 St. ¶¶ 9, 19; Rpt. of 4/26/2016 PPT Mtg. at 3; Rpt. of 6/6/2016 PPT Mtg. at 3. At the PPT meeting

in August of 2016, when Defendant agreed to pay for the tuition for T.D. to attend Keswell, the school team emphasized that WSSC would remain the school team's recommendation, and that Defendant's agreement to pay for the Keswell tuition was "an accommodation" to Plaintiff, reflecting the school team's concern that T.D. had not been in school for several years.  Tr. of 8/31/2016 PPT Mtg. at 90:2–13; Rpt. of 8/31/2016 PPT Mtg. at 3.

At the next two PPT meetings, Defendant continued to refuse to provide transportation, explaining that Keswell was not Defendant's recommendation.  Tr. of 11/3/2016 PPT Mtg. at 34:16–20; Rpt. of 7/26/2017 PPT Mtg. at 4.  At PPT meetings in 2018 and 2019, Defendant recommended placing T.D. at CCCD, Giant Steps, or The Bridge School, but Plaintiff rejected those recommendations and requested placing T.D. at Keswell.  Pl.'s L.R. 56(a)2 St. ¶¶ 57–58, 67, 69, 76; Rpt. of 7/11/2018 PPT Mtg. at 5; Rpt. of 4/29/2019 PPT Mtg. at 3, 6; Tr. of 7/11/2019 PPT Mtg. at 128:14–19, 141:14–25.  As with the prior years, Defendant agreed to pay for T.D.'s tuition to Keswell, but denied that Keswell was its recommended placement and refused Plaintiff's request to provide transportation.  Rpt. of 7/11/2018 PPT Mtg. at 5; Rpt. of 4/29/2019 PPT Mtg. at 3, 6; Tr. of 7/11/2019 PPT Mtg. at 135:15–19, 136:6–9.

Considering the evidence of Defendant's consistent objection to Keswell and frequent attempts to place T.D. at a private school Defendant recommended, the hearing officer reasoned that the school team "disagreed strongly" with the Keswell placement but "felt they were being put into a bind" because, if they did not agree to at least pay for T.D.'s tuition to attend Keswell, "they risked a situation wherein [T.D.] could be kept home without education."  H.O. Decision at 5.  The hearing officer based this finding on Dr. Holland's testimony that he believed Plaintiff would keep T.D. at home if he could not attend Keswell.  *Id.*  The hearing officer then concluded

that, because Keswell was not Defendant's proposal, it was not Defendant's placement, and thus it was Plaintiff's unilateral placement.  *Id.* at 6.

Under the principles articulated by *Zvi D.*, *K.D.*, and *Makiko D.*, the Court finds by a preponderance of the evidence that Keswell was Plaintiff's unilateral placement, notwithstanding Defendant's agreement to pay for T.D.'s tuition.  Affording proper deference to the hearing officer's assessment of Dr. Holland's credibility, *M.H.*, 685 F.3d at 240, the Court agrees with the hearing officer's finding that Defendant's decision to pay T.D.'s tuition amounted to nothing more than an agreement to pay for, rather than an agreement to place T.D. at, Keswell.  Indeed, the records of the PPT meetings demonstrate that at no point did the school team recommend placing T.D. at Keswell; to the contrary, the school team repeatedly raised concerns with the long commute and expressed that Keswell's programs could be replicated at closer, state-approved private schools.  For example, as noted above, the record demonstrates that Defendant recommended placing T.D. at private schools other than Keswell for at least the 2016–17, 2018–19, and 2019–20 school years.  In addition, at the PPT meeting on July 11, 2018, Kathy Quaglino, a member of T.D.'s PPT,[9] reported her prior observation of T.D. at Keswell and opined that the programs she observed could be replicated in the two state-approved private schools in Connecticut the school team recommended that year.  Rpt. of 7/11/2018 PPT Mtg. at 4; Def.'s L.R. 56(a)2 St. ¶¶ 20–21.

In light of this clear and consistent evidence that Defendant did not recommend placing T.D. at Keswell and merely acceded to Plaintiff's requests that Defendant pay for T.D.'s tuition there, the Court finds that T.D.'s placement at Keswell reflected a unilateral placement by Plaintiff.

---

[9] The record contains conflicting evidence regarding Quaglino's position.  *Compare* Rpt. of 7/11/2018 PPT Mtg. at 2 (designating Quaglino as T.D.'s "Reg. Ed. Teacher"), *with* Def.'s L.R. 56(a)2 St. ¶ 20 (admitting that Quaglino was Dr. Holland's assistant director).

Thus, Defendant was not required to pay for T.D.'s tuition at Keswell or the expenses associated with transporting him there.

### 2. Whether Plaintiff is Nevertheless Entitled to Reimbursement

As explained above, when a parent elects a unilateral placement at their own financial risk, the parent may be entitled to reimbursement for the private school placement and related services under certain circumstances. 20 U.S.C. § 1412(a)(10)(C)(ii); *M.O.*, 793 F.3d at 239. Whether a parent is entitled to reimbursement for the cost of a unilateral private school placement "turns on two distinct questions: first, whether the challenged [placement] was adequate to provide the child with a free appropriate public education; and second, whether the private educational services obtained by the parents were appropriate to the child's needs." *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (citing *Burlington*, 471 U.S. at 370). Only if a court determines that a challenged IEP was inadequate should it proceed to the second question. *Id.* In addition, "because the authority to grant reimbursement is discretionary," the court must assess whether "equitable considerations relating to the reasonableness of the action taken by the parents" also warrant reimbursement. *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363–64 (2d Cir. 2006) (internal alterations and quotation marks omitted) (quoting *Burlington*, 471 U.S. at 374).

The first question—whether Defendant's recommended placements would have been adequate to provide T.D. with free appropriate public education—has two components, one procedural and one substantive. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189–90 (2d Cir. 2012). First, the court examines "whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA." *Id.* at 190 (citation and internal quotation marks omitted). "Procedural violations only entitle parents to reimbursement if they 'impeded the child's right to a free appropriate public education,' 'significantly impeded the

parents' opportunity to participate in the decisionmaking process,' or 'caused a deprivation of educational benefits.'" *C.F.*, 746 F.3d at 78–79 (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)). Then, the court examines "whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *R.E.*, 694 F.3d at 190 (cleaned up; citation omitted). "Substantive inadequacy automatically entitles the parents to reimbursement." *Id.* Although Defendant bears the ultimate burden to prove that its recommended placements would have provided free appropriate public education, Plaintiff bears the initial burden to produce evidence to support any claim that Defendant violated the IDEA's procedural safeguards and that Defendant's recommended placements were substantively inadequate. *Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245, 267–68 (D. Conn. 2008) (citing *Weast*, 546 U.S. at 67–71 (Breyer, J., dissenting), and Conn. Agencies Regs. § 10-76h-14(a)).

The Court finds no procedural violations of the IDEA that deprived T.D. of educational benefits or in any way impeded Plaintiff's opportunity to participate in the decisionmaking process. To be sure, the IDEA requires a local educational agency to provide prior written notice to the parent when the agency proposes a placement change or refuses a parent's requested placement, and the notice must contain a description of the action proposed or refused by the agency and an explanation for the agency's decision. 20 U.S.C. §§ 1415(b)(3), 1415(c)(1); 34 C.F.R. § 300.503; *E.H.*, 164 F. Supp. 3d at 547. Here, Plaintiff again contends that Defendant violated the IDEA's procedural safeguards by raising the issue of a new placement for T.D. at various PPT meetings without having notified Plaintiff of that issue in advance. ECF No. 30 at 5–6.

As explained above, the Court's review of the notices sent to Plaintiff before each PPT meeting reveals that, on the whole, they did not comply with the IDEA's requirement that a

proposed placement change, or a refusal of a parent's requested placement, must be preceded with clear, detailed notice.  Although the notice sent to Plaintiff before the very first PPT meeting in April of 2016 expressly stated that the purpose was to "Discuss Placement Options," Not. of 4/26/2016 PPT Mtg. at 2, none of the subsequent notices specifically identified T.D.'s private school placement as a topic to be raised at the PPT meetings.  *See* Not. of 8/31/2016 PPT Mtg. at 2; Not. of 6/6/2016 PPT Mtg. at 2; Not. of 7/26/2017 PPT Mtg. at 2; Not. of 7/11/2018 PPT Mtg. at 2; Not. of 4/29/2019 PPT Mtg. at 2.  Because the notices after April of 2016 mentioned nothing about T.D.'s placement, they appear not to satisfy the plain language of the IDEA's requirement for the provision of procedural safeguards.

That said, procedural violations of the IDEA entitle the parent to reimbursement for the private school placement only if the violation "impeded the child's right to a free appropriate public education," "significantly impeded the parents' opportunity to participate in the decisionmaking process," or "caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii); *C.F.*, 746 F.3d at 78–79.  This inquiry focuses on whether the parent "had an adequate opportunity to participate in" the decisionmaking process in light of the procedural violation.  *See Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).

Here, the Court cannot find, by a preponderance of the evidence, that Plaintiff was deprived of a meaningful opportunity to participate in the PPT meetings notwithstanding the lack of specific notice that T.D.'s placement would be discussed.  As explained above, from April 2016 onward, Dr. Holland and the other school team members of the PPT steadfastly opposed T.D.'s placement at Keswell, consistently represented that Keswell was not their recommendation, and repeatedly explained their reasons for opposing it.  Although Plaintiff did not have particularized prior notice regarding which other private schools Defendant intended to propose at each PPT meeting, it could

hardly come as a surprise to Plaintiff, or Plaintiff's counsel who attended all the meetings with her, that Defendant would broach the topic of T.D.'s placement at the PPT meetings, given the parties' long and contentious history on that topic.  Moreover, at each PPT meeting Plaintiff reiterated her request for the provision of transportation and reimbursement for transportation expenses, which Defendant denied *due to* the school team's continued opposition to T.D.'s placement at Keswell. In other words, Plaintiff herself raised a reimbursement issue that implicated the parties' ongoing debate regarding the propriety of T.D.'s placement at Keswell, which undermines any assertion that Plaintiff was denied a meaningful opportunity to participate in the discussion regarding T.D.'s placement.

Cases in which procedural violations relating to notice justify reimbursement involve a local educational agency ambushing the parents, leaving them "completely in the dark" regarding the rationale for the agency's decision or scrambling to oppose the decision or make difficult decisions regarding their child's education.  *E.H.*, 164 F. Supp. 3d at 554; *S.Y. v. N.Y.C. Dep't of Educ.*, 210 F. Supp. 3d 556, 572–73 (S.D.N.Y. 2016).  The record here reveals no such circumstances.  To the contrary, Plaintiff and her counsel were well aware of Defendant's consistent opposition to placing T.D. at Keswell, and they had ample opportunity to respond to that opposition at each PPT meeting.  *See East Lyme Bd. of Educ*, 790 F.3d at 439 (rejecting a parent's procedural violation claim because she fully participated in the IEP team meeting); *Cerra*, 427 F.3d at 193 (same).  Indeed, Plaintiff was able to advocate for and obtain the lion's share of what she wanted—Defendant's agreement to pay for T.D.'s tuition to attend Keswell. Accordingly, the Court concludes that, although Defendant's notices before the PPT meetings did not satisfy the IDEA's requirements, those procedural violations alone do not amount to a denial

of free appropriate public education, and thus they do not warrant reimbursement for the expenses associated with transporting T.D. to Keswell.

In briefing the present motions for summary judgment, Plaintiff does not meaningfully address whether Defendant's recommended placements at WSSC, CCCD, Giant Steps, or The Bridge School were substantively adequate, namely, whether those placements were "reasonably calculated to enable [T.D.] to receive educational benefits." *See R.E.*, 694 F.3d at 190 (cleaned up) (quoting *Rowley*, 458 U.S. at 206–07). The record demonstrates that, throughout the course of T.D.'s education, Plaintiff objected to Defendant's recommendation to place T.D. at WSSC based on Dr. Roberts' opinion that WSSC was not appropriate for T.D. and that the particular features of WSSC could exacerbate T.D.'s weaknesses. Def.'s L.R. 56(a)2 St. ¶ 10; ECF No. 28 at 78–79. In subsequent years, Plaintiff explained that she objected to Defendant's recommendations to place T.D. at CCCD, Giant Steps, or The Bridge School because she would follow only Dr. Samanich's recommendation and that Dr. Samanich recommended "only Keswell." Tr. of 7/11/2019 PPT Mtg. at 141:14–25. The most the Court can glean from this evidence is that Plaintiff's opposition to Defendant's recommended placements was motivated by her belief that Keswell was the best placement for T.D. in light of the recommendations of T.D.'s treating medical providers, not by any particular belief that Defendant's recommended placements were substantively inadequate. That does not, however, satisfy Plaintiff's burden to produce evidence suggesting that each of Defendant's recommended placements were substantively inadequate under the IDEA. Importantly, the IDEA requires only free *appropriate* public education and calls for a "basic floor of opportunity" for children with disabilities; it "does not require that a child be provided with the optimal programmatic alternative." *C.F.*, 764 F.3d at 72 (quoting *Walczak*, 142 F.3d at 132).

In sum, the Court finds that Keswell was Plaintiff's unilateral placement, and that Plaintiff has not demonstrated that she is entitled to reimbursement for expenses associated with transporting T.D. to Keswell under the IDEA.[10]  Specifically, Plaintiff has not shown that T.D. was deprived of free appropriate public education due to any prejudicial procedural violation of the IDEA by Defendant or due to any substantive inadequacy of Defendant's recommended placements.  Accordingly, Plaintiff was not entitled to have Defendant pay for T.D.'s tuition to attend Keswell, and, as such, she is not entitled to reimbursement for expenses incurred for the related service of transportation to and from Keswell.  Defendant's motion for summary judgment is thus granted on that issue, and Plaintiff's motion for summary judgment is denied on that issue.

## C.  Reimbursement for Assistive Technology Expenses

Finally, Plaintiff claims she is entitled to reimbursement for the purchase price of an iPad and a MacBook Pro computer that she purchased the day after filing her due process complaint with the Department of Education.  H.O. Decision at 5.  An assistive technology device is defined as "any item, piece of equipment, or product system . . .  that is used to increase, maintain, or improve functional capabilities of a child with a disability."  20 U.S.C. § 1401(1)(A).  The IDEA requires that, when developing a child's IEP, the PPT must "consider whether the child needs assistive technology devices," among other things.  20 U.S.C. § 1414(d)(3)(B)(v); *J.G. ex rel. N.G.*

---

[10] In light of the Court's conclusion that Plaintiff has not shown that T.D. was deprived of a free appropriate public education, the Court need not consider whether Keswell was appropriate to T.D.'s needs, whether the balance of equities would favor reimbursement, or whether Plaintiff acted unreasonably.  *See M.C.*, 226 F.3d at 66; *Frank G.*, 459 F.3d at 363–64 (citing *Burlington*, 471 U.S. at 374); *S.Y.*, 210 F. Supp. 3d at 578.  On that last point, the hearing officer found that Plaintiff's general lack of cooperation and insistence on sending T.D. to a particular school that did not conform to the Connecticut standards was unreasonable.  H.O. Decision at 6.  Although the Court acknowledges the hearing officer's factual finding that Plaintiff generally refused to cooperate with Defendant in the course of T.D.'s education, the Court is skeptical that the other reason cited by the hearing officer would support a finding of unreasonableness.  The U.S. Supreme Court has explained that, when a local educational agency fails to provide a child with free appropriate public education and the parent seeks reimbursement for a private school placement, the fact that the parent selected a program that was not approved by the state does not necessarily bar reimbursement.  *Florence Cnty. Sch. Dist. v. Carter by and through Carter*, 510 U.S. 7, 14 (1993).

*v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 647 (S.D.N.Y. 2011).  Furthermore, federal regulations implementing the IDEA require a local educational agency to make assistive technology devices available to a child with a disability if required for that child's special education or related services.  34 C.F.R. § 300.105(a).  Those regulations also provide that, "[o]n a case-by-case basis, the use of school-purchased assistive technology devices in a child's home . . . is required if the child's IEP Team determines that the child needs access to those devices in order to receive [free appropriate public education]."  *Id.* § 300.105(b).  As one court in this district has explained, "although assistive technology will almost always be beneficial, a school is only required to provide it if the technology is necessary.  Moreover, the failure to provide assistive technology denies a student [free appropriate public education] only if the student could not obtain a meaningful benefit without such technology."  *J.C. ex rel. C. v. New Fairfield Bd. of Educ.*, No. 3:08-CV-1591 (VLB), 2011 WL 1322563, at *18 (D. Conn. Mar. 31, 2011) (citation and internal quotation marks omitted).

In the administrative proceeding, the hearing officer rejected Plaintiff's claim for reimbursement of the expenses for the iPad and Macbook Pro, explaining that, because Plaintiff's placement of T.D. at Keswell was unilateral, Defendant was not required to pay for T.D.'s tuition at Keswell or any of the related services, including assistive technology devices.  H.O. Decision at 6.  The hearing officer summarized that Plaintiff testified that Keswell had provided T.D. with an iPad while he was attending Keswell, but that he had broken the family's iPad, and that Plaintiff had purchased the computer for T.D. to remotely access Keswell's online programs.  *Id.*

The record is quite sparse on this claim, and, as such, the Court cannot find by a preponderance of the evidence that Defendant's refusal to pay for the assistive technology devices at issue violated the IDEA.  To begin, the Court has found no evidence that assistive technology

31

devices generally, much less the iPad and MacBook Pro computer at issue here, were ever discussed in the PPT meetings.  This is consistent with the fact that Plaintiff purchased the devices after filing her due process complaint with the Department of Education.  Moreover, neither party has supplied the Court with T.D.'s IEPs during the relevant time period, so the Court cannot find that his IEPs required Defendant to provide him with assistive technology devices.  In addition, Plaintiff has not explained the importance of the assistive technology devices to T.D.'s learning or how a failure to provide them would amount to a denial of free appropriate public education.

Finally, as explained above and in the hearing officer's decision, Plaintiff unilaterally placed T.D. at Keswell notwithstanding Defendant's recommendations to place him in other private schools, and she has not demonstrated that those recommendations would not have provided free appropriate public education, so she is not entitled to reimbursement from Defendant for T.D.'s public education or related services.  Thus, Defendant's motion for summary judgment is granted on that issue, and Plaintiff's motion for summary judgment is denied on that issue.

## V.      CONCLUSION

For the reasons described above, Defendant's motion for summary judgment, ECF No. 26, is GRANTED, and Plaintiff's motion for summary judgment, ECF No. 27, is DENIED.  The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of March, 2023.


  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE